01

02

03

04

05

06

07

08

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

09  ANTONINA RYMARUK,                          )
                                               )
10        Plaintiff,                           )
                                               )   Case No. C04-01658-MJP
11        v.                                   )
                                               )
12  JO ANNE B. BARNHART, Commissioner,         )
    Social Security Administration,            )   REPORT AND RECOMMENDATION
                                               )
13                                             )
          Defendant.                           )
14  _____   )

15        Plaintiff Antonina Rymaruk proceeds through counsel in her appeal of a final decision of

16  the Commissioner of the Social Security Administration (the "Commissioner").    The

17  Commissioner denied Plaintiff's application for Supplemental Security Income ("SSI") under Title

18  XVI of the Social Security Act after a hearing before an Administrative Law Judge ("ALJ").   For

19  the reasons set forth below, it is recommended that the final decision of the Commissioner be

20  affirmed and the appeal be dismissed.

21                         I.  FACTS AND PROCEDURAL HISTORY

22        Plaintiff is a 55-year-old Ukranian immigrant who has a high school education, but is

23  unable to speak or read English.  AR. at 18, 57, 130, 308-09.  She last worked in 1990 in Ukraine.

24  AR. at 70.  On February 27, 2001, plaintiff applied for SSI benefits (AR. at 55-74), alleging

25  disability stemming from migraine headaches, dizziness, high blood pressure, heart problems, and

26  arthritis.  AR. at 92.  Her application was denied upon initial and reconsidered determinations.

REPORT AND RECOMMENDATION
PAGE -1

01    AR. at 25-31.  Following a hearing before an ALJ, the plaintiff was found not disabled under the

02    Social Security Act because she was capable of performing past relevant work.  AR. at 17-24.

03    The Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as the

04    Commissioner's final decision in this case.  AR. at 5-8, 11-12.

05        Pending the appeal of that hearing, plaintiff reapplied for SSI benefits and began receiving

06    them on January 9, 2004.  She continues to receive SSI benefits today.  Plaintiff seeks reversal of

07    the September 29, 2003, unfavorable ALJ decision and payment of back benefits for the period

08    of February 27, 2001, through September 29, 2003.  Pl. Rply. Br. (Dkt. No. 26) at 2.

09                                    II.  JURISDICTION

10        This Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

11                                III.  STANDARD OF REVIEW

12        The district court may set aside the Commissioner's denial of social security benefits when

13    the ALJ's findings are based on legal error or not supported by substantial evidence in the record

14    as a whole.  *See* 42 U.S.C. § 405(g); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996)

15    (internal citations omitted).  Substantial evidence is defined as more than a mere scintilla but less

16    than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate

17    to support a conclusion.  *Smolen,* 80 F.3d at 1279.  The ALJ is responsible for determining

18    credibility, resolving conflicts in medical testimony, and for resolving ambiguities.  *Andrews v.*

19    *Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  Where the evidence is susceptible to more than one

20    rational interpretation, it is the Commissioner's conclusion that must be upheld.  *Thomas v.*

21    *Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Smolen*, 80 F.3d at 1292).

22        The Court has discretion to remand for further proceedings or to award benefits.  *See*

23    *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990).  The Court may direct an award of benefits

24    where "the record has been fully developed and further administrative proceedings would serve

25    no useful purpose."  *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002).

26

REPORT AND RECOMMENDATION
PAGE -2

01
02
03
04

> Such a circumstance arises when:  (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

05 *Id.* at 1076-77.

06 ## IV.  EVALUATING DISABILITY

07 The claimant bears the burden of proving that she is disabled within the meaning of the

08 Social Security Act. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  Disability is defined

09 as the "inability to engage in any substantial gainful activity by reason of any medically

10 determinable physical or mental impairment, which can be expected to result in death, or which

11 has lasted or can be expected to last for a continuous period of not less than twelve months[.]"

12 42 U.S.C. § 423(d)(1)(A).  A claimant is disabled only if her impairments are of such severity that

13 she is not only unable to do her previous work, but cannot, considering her age, education, and

14 work experience, engage in any other substantial gainful activity existing in the national economy.

15 *See* 42 U.S.C. §§ 423(d)(2)(A), 1382(c)(a)(3)(B); *See also Tackett v. Apfel*, 180 F.3d 1094, 1098

16 (9th Cir. 1999).

17 The Social Security regulations set out a five-step sequential evaluation process for

18 determining whether a claimant is disabled within the meaning of the Social Security Act.  *See* 20

19 C.F.R. §§ 404.1520, 416.920.  At step one, the claimant must establish that she is not engaging

20 in any substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant does

21 so, then at step two, the claimant must establish that she has one or more medically severe

22 impairments or combination of impairments that limit her physical or mental ability to do basic

23 work activities.  If the claimant does not have such impairments, she is not disabled.  20 C.F.R.

24 §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner

25 moves to step three to determine whether the impairment meets or equals any of the listed

26

REPORT AND RECOMMENDATION
PAGE -3

01 impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant who

02 meets one of the listings for the required twelve-month duration requirements is disabled. *Id.*

03       When the claimant's impairment neither meets nor equals one of the impairments listed in

04 the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual

05 functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner

06 evaluates the physical and mental demands of the claimant's past relevant work to determine

07 whether the claimant can still perform that work. *Id.* If the claimant is not able to perform her

08 past relevant work, then the burden shifts to the Commissioner at step five to show that the

09 claimant can perform some other work that exists in significant numbers in the national economy,

10 taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§

11 404.1520(f), 416.920(f); *Tackett*, 180 F.3d at 1099-100. If the Commissioner finds the claimant

12 is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

V.  DECISION BELOW

13

14       On September 29, 2003, the ALJ issued his decision, finding:

15     1.    The plaintiff had not engaged in substantial gainful activity since
        the alleged onset of disability.

16

17     2.    The plaintiff's migraine headaches constituted a severe impairment.

18     3.    The impairment did not meet or medically equal one of the listed
        impairments in 20 C.F.R. § 416.920(c).

19     4.    The plaintiff's allegations regarding her limitations were not totally
        credible.

20

21     5.    The plaintiff had residual functional capacity to perform light work.

22     6.    The plaintiff's past relevant work as a telephone operator in Russia did not
        require the performance of work-related activities precluded by her
        residual functional capacity.

23

24     7.    The plaintiff's migraine headaches did not prevent the plaintiff from
        performing her past relevant work.

25     8.    The plaintiff was not under a "disability" as defined by the Social Security
        Act, at any time through the date of the decision.

26

REPORT AND RECOMMENDATION
PAGE -4

01 AR. 23.

02                                VI.  ISSUES ON APPEAL

03     A.     Did the ALJ err by finding that the plaintiff had residual functional capacity to

04 perform light work or to perform her last relevant work?

05     B.     Did the ALJ err by rejecting or by failing to give proper weight to certain evidence?

06     C.     Did the ALJ err by failing to call the vocational expert who was present at the

07 hearing but not called to testify?

08                                VII.  DISCUSSION

09     A.     *Substantial evidence exists in the record supporting the finding that the*
            *plaintiff had residual capacity to perform light work and her past relevant*
10          *work.*

11          In this case, Ms. Rymaruk's medical issues consisted of migraine headaches, depression

12 with fatigue, dizziness, high blood pressure, and arthritic joint pain.  AR. 92.  The ALJ heard from

13 the plaintiff and her daughter, and reviewed medical reports and evaluations from Drs. Trible,

14 Caratao, Virji, and Smith.  On issues other than migraine headaches, the ALJ also considered

15 medical reports and evaluations from Drs. Quint and Shu, and R. Eisenhauer, a psychologist.  The

16 ALJ concluded that the plaintiff's migraine headaches were the only impairments that qualified as

17 a severe impairment for SSI purposes.  AR. 20.  Plaintiff does not appear to challenge this

18 determination.

19          Step four of the sequential evaluation process requires an ALJ to evaluate a claimant's

20 RFC to determine if she retains residual functional capacity to return to her past relevant work and

21 determine whether she can still perform that prior work. 20 C.F.R. §§ 404.1520(e), 416.920(e).

22 Prior work in a foreign country is relevant for this determination unless the claimant shows that

23 such work was less strenuous than in the United States.  *Quang Van Han v. Bowen*, 882 F.2d

24 1453, 1457-58 (9th Cir. 1989).

25

26

REPORT AND RECOMMENDATION
PAGE -5

01    Plaintiff argues that the ALJ erred by finding that she performed the job of telephone

02 operator, as defined by the Department of Labor's *Dictionary of Occupational Titles*, and that she

03 performed the job of messenger on a reliable and consistent basis.  Dkt. No. 9 at 10.

04    In her application, which is in English, the plaintiff identified her former work from 1985

05 until 1990 as a telephone operator. AR. 83.  Although the plaintiff's brief argues that the

06 information on the application was inaccurate and incomplete due to language differences, the

07 finding reached by the ALJ was consistent with testimony that Ms. Rymaruk provided at the

08 hearing with the benefit of an interpreter.  Plaintiff testified that she answered telephones and

09 served as a messenger in Russia and that this work approached a full-time basis.  AR. at 311-15.

10 This job involved answering a single telephone and relaying messages by foot to different portions

11 of the farm. *Id.*  Other evidence in the record is also generally consistent with this determination.

12 AR. at 86, 93, 120, 152.  Plaintiff, however, also testified that her boss in Ukraine allowed her to

13 rest when needed and that she ultimately went on Ukranian disability before emigrating to the

14 United States.  AR. at 313-16.

15    The ALJ determined plaintiff's prior jobs were similar to the U.S. job of telephone

16 operator, which is usually classified as "sedentary" under the *Dictionary of Occupational Titles*.

17 AR. 22-23.  In addition, the plaintiff's description of her walking to deliver messages would

18 increase the exertional demand to, at most, the "light work" level of exertional demands, similar

19 to work as a messenger. *Id.*

20     On January 31, 2000, Dr. Tible assessed the migraine headaches as a "moderate

21 impairment" and concluded that Ms. Rymaruk was qualified to perform "light work."  Dr. Tible

22 also concluded that a treatment plan would likely restore the plaintiff's ability to perform at least

23 half-time in a normal day to day setting.  AR. 131-32.  Dr. Tible subsequently submitted a

24 statement dated July 29, 2002, in which she concluded that Ms. Rymaruk's headaches would limit

25 her ability to work or to look for full-time work, discussed more fully below.  AR. 257.  On

26 March 27, 2003, Dr. Tible submitted another statement, indicating that Ms. Rymaruk had an

REPORT AND RECOMMENDATION
PAGE -6

01  impairment that limited her ability to work or look for full-time work that would last thirty to

02  ninety days if she followed recommended treatment.  Dr. Tible also indicated that Ms. Rymaruk

03  could not pursue job search activities or work while in treatment, and stated "UNK" as an answer

04  to when she would be able to resume at least part-time work.  Dr. Tible noted that Ms. Rymaruk

05  suffered daily migraines, but answered "NO" as to whether Ms. Rymaruk should pursue long term

06  disability benefits such as SSI.  AR. 236-38.

07       On December 19, 2001, Dr. Caratao also assessed the plaintiff's migraine headaches as

08  a "moderate impairment," but stated that the plaintiff would be limited to "sedentary work," and

09  that she would be unable to perform at least half-time work in a normal day for at least twenty

10  weeks.  When asked whether treatment was likely to restore the plaintiff's ability to perform at

11  least half-time in a normal day-to-day setting, Dr. Caratao wrote "in doubt."  AR. 168-69.

12       Drs. Virji and Smith, both State Agency medical consultants, reviewed the medical

13  evidence and concluded that Ms. Rymaruk was capable of performing light work.  AR. 25, 27,

14  170-75.

15       Thus, although the evidence is in conflict, substantial evidence (defined as more than a

16  "mere scintilla but less than a preponderance," *Smolen*, 80 F.3d at 1279) exists to support the

17  ALJ's finding that plaintiff had the residual capacity to perform "light work" and that her former

18  job correlated to the "sedentary" level, or at the maximum, to the "light" level, unless other

19  evidence, including the testimony of the plaintiff and her daughter, and subsequent medical

20  reports, compels a contrary conclusion and was erroneously discredited by the ALJ.

21        **B.**    *The ALJ did not err with respect to credibility assessments of the*
                 *plaintiff or weight accorded to the testimony of the plaintiff's*
22                 *daughter.*

23       Plaintiff argues that the ALJ erroneously rejected "entire categories of evidence" by

24  discounting her testimony and testimony given by her daughter.  Dkt. No. 19 at 10-11.  She

25  asserts that the ALJ's rejection of this testimony was based on bias and stereotyping.  Dkt. No.

26

REPORT AND RECOMMENDATION
PAGE -7

01  19 at 10-11.  Defendant responds that the ALJ gave numerous clear and convincing reasons for

02  disbelieving plaintiff's testimony.  Dkt. No. 25 at 12.

03              1.  Plaintiff's Testimony.

04          According to the Commissioner's regulations, a determination of whether to accept a

05  claimant's subjective symptom testimony requires a two-step analysis.  20 C.F.R. § 404.1529;

06  SSR 96-7p, 1996 WL 374186 (S.S.A.)  First, the ALJ must determine whether there is a

07  medically determinable impairment that could reasonably be expected to cause the claimant's

08  symptoms.  20 C.F.R. § 1529(a) and (b); SSR 96-7p, at *2.  Next, the ALJ must evaluate the

09  intensity and persistence of the claimant's symptoms, using seven factors laid out in SSR 96-7p.[1]

10  20 C.F.R. § 1529(c); SSR 96-7p, at *2.  Once a claimant produces medical evidence of an

11  underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of

12  symptoms merely because the symptoms are unsupported by objective medical evidence.  *Reddick*

13  *v. Chater,* 157 F.3d 715, 722 (9th Cir. 1998) (internal citations omitted) (en banc).  Absent

14  affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and

15  convincing" reasons for rejecting the claimant's testimony.  *Id.; see also Smolen*, 80 F.3d at 1283-

16  84.  In presenting these reasons, the ALJ must specifically identify what testimony is not credible

17  and what evidence undermines the claimant's complaints; general findings are insufficient.  *Lester*

18  *v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996).

19          The ALJ provided specific clear and convincing reasons for disbelieving plaintiff's

20  testimony due to inconsistencies in the record.  The ALJ noted that plaintiff first reported positive

21  _____

22          [1]SSR 96-7p lists at least seven factors that an adjudicator must consider when assessing
    the credibility of an individual's statements.  They include (1) the individual's daily activities; (2)

23  the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3)
    factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side

24  effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5)
    treatment, other than medication, the individual receives or has received for relief of pain or other

25  symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain
    or other symptoms [. . .]; and (7) any other factors concerning the individual's functional

26  limitations and restrictions due to pain or other symptoms.  SSR 96-7p at *3.

REPORT AND RECOMMENDATION
PAGE -8

01  results from her migraine medication, but a year later said they were not working.  AR. at 21.  He

02  also noted that there was no evidence that plaintiff followed through on her neurologist's 2001

03  referral to a pain clinic and that she never returned to her neurologist.  *Id*.  He also noted that in

04  at least one instance, she began suffering a headache on Friday but waited until Tuesday to take

05  her pain-reducing medication.  *Id*.  After she took the medication, the headache went away.  *Id.*

06  After identifying these, and other reasons, he hypothesized that plaintiff's application was

07  motivated by a pending disqualification from other assistance.  *Id*.  He then added that "[t]he lack

08  of motivation to work combined with the secondary gain motivation for benefits raises further

09  credibility concerns[ ]" and determined plaintiff to be "not entirely credible." *Id*.  Taken together,

10  these reasons satisfy the ALJ's obligation to provide specific examples of a clear and convincing

11  nature for discounting plaintiff's testimony, and his credibility determination is therefore binding

12  upon this Court.  *Morgan v. Commissioner,* 169 F.3d 595, 599 (9th Cir. 1999).

13                         2.   Daughter's Testimony.

14          In order to determine whether a claimant has an impairment, an ALJ may also consider

15  lay witness sources, such as testimony from family members.  20 C.F.R. § 404.1513(d)(4).  Lay

16  witness testimony as to a claimant's symptoms or how an impairment affects ability to work is

17  competent evidence, 20 C.F.R. § 404.1513(e), *Sprague v. Bowen,* 812 F.2d 1226, 1232 (9th

18  Cir.1987), and therefore *cannot* be disregarded without comment.  *Dodrill v. Shalala*, 12 F.3d

19  915, 918-19 (9th Cir. 1993).  If an ALJ wishes to discount the testimony of a lay witness, he must

20  provide reasons germane to each witness and may not simply categorically discredit the testimony.

21  *Id.* Identifying inconsistencies between such statements and the record when looked at as a whole

22  is sufficient.  *Lewis v. Apfel*, 236 F.3d 503, 510-12 (9th Cir. 2001).

23          Citing *Smolen*, 80 F.3d at 1288-89, the plaintiff asserts that the ALJ erred by summarily

24  rejecting the testimony of her daughter, Valentine Rymaruk.  In *Smolen*, the Ninth Circuit held

25  it was error to categorically reject family testimony as biased, because family members would

26  often be in the best position to observe the needs and disabilities of other family members.

REPORT AND RECOMMENDATION
PAGE -9

01  *Smolen,* however, does not stand for the proposition that family member testimony must be

02  accorded dispositive weight.

03      In this case, the ALJ gave the testimony of plaintiff's daughter, Valentine Rymaruk, only

04  limited weight.  AR. 22.  Valentine Rymaruk testified that she did all of the cooking and cleaning

05  in the home and had done so for at least five years.  AR. at 327-28.  She also testified that she had

06  observed the debilitating effects of her mother's migraines and that they could occur as many as

07  four times per week.  AR. at 327.  The ALJ indicated that this testimony was given "limited"

08  weight because it conflicted with plaintiff's earlier statements to two different doctors that she

09  performed housework when she did not have headaches and that she enjoyed doing so.  AR. at

10  21, 134, 151-52.  He also noted that Valentine's observations of her mother were necessarily

11  limited because, though she lived at home, she attended college.  AR. at 21.  Finally, the ALJ also

12  noted that she could be influenced by a feeling of need to help her family obtain benefits.  *Id.*  The

13  foregoing reasons are germane to the credibility determinations and the weight to be accorded to

14  the testimony.  The ALJ did not err with respect to the weight to be given to the testimony of the

15  plaintiff and her daughter.

16      *C.  The ALJ did not erroneously weigh or reject evidence from Drs. Tible and Caratao.*

17      Plaintiff argues that the ALJ erred by failing to provide clear and convincing reasons for

18  disregarding the medical opinions of Drs. Caratao and Tible, two of her treating physicians.  Dkt.

19  No. 19 at 12-13.  The Commissioner responds that the ALJ was required to provide only specific

20  and legitimate reasons for disregarding the opinions and that the ALJ met that burden.  Dkt.

21  No. 25 at 6-8.

22      Because treating physicians are employed to cure and thus have a greater opportunity to

23  know and observe the patient as an individual, their opinions are given greater weight than the

24  opinions of other physicians.  *Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989).  A treating

25  physician's opinion, however, is not necessarily conclusive as to either a physical condition or the

26  ultimate issue of disability.  *Id.* at 761-62 & n.7.  The ALJ may disregard the treating physician's

REPORT AND RECOMMENDATION
PAGE -10

01 opinion whether or not that opinion is contradicted. *Magallanes,* 881 F.2d 742, 751 (9th Cir.

02 1989) (internal citations omitted).

03     Where a treating physician's opinion is not contradicted by another physician, it may be

04 rejected only for "clear and convincing" reasons supported by substantial evidence in the record.

05 *Reddick*, 157 F.3d at 725. An ALJ must defer to a treating physician's opinion, even if

06 controverted by other medical opinions, unless the ALJ provides specific and legitimate reasons

07 based on substantial evidence in the record. *Magallanes*, 881 F.2d at 751; *Murray v. Heckler*, 722

08 F.2d 499, 502 (9th Cir. 1983). The ALJ can meet this burden by setting out a detailed and

09 thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof

10 and making findings." *Magallanes,* 881 F.2d at 751. An ALJ may, however, reject medical

11 opinions based upon check-the-box type reports that lack a narrative explanation for their

12 conclusions. *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (internal citations omitted). The

13 court's main concern in connection with this inquiry centers around the search for specific

14 justifications and rationale for a conclusion, as opposed to conclusory statements or a mere

15 reiteration of a claimant's subjective complaints. *Id.* Courts are not obligated to accept any

16 treating physician's opinion that is brief and conclusory in form and that offers few clinical findings

17 to support its conclusions. *Magallanes*, 881 F.2d at 751.

18     1. Dr. Tible.

19     In this case, the ALJ accepted Dr. Tible's 2000 report, AR 131-32, to support his finding

20 that the plaintiff could perform "light" work, but discounted her 2002 and 2003 evaluations that

21 indicated plaintiff would not be capable of pursuing work for up to a year in the case of the 2002

22 report, and for at least thirty to ninety days in the case of the 2003 report. AR. at 20, 236-38, 257.

23 The ALJ justified this decision by noting that Dr. Tible's 2000 report rated Ms. Rymaruk's

24 migraines as only "moderate." The ALJ also found that Dr. Tible's "light work" capacity rating

25 in the 2000 report was consistent with Ms. Rymaruk's daily activities of tending to children,

26 cooking, and laundry. AR. 20.

01   The ALJ discounted the subsequent 2002 and 2003 reports from Dr. Tible.  He reasoned

02   that Dr. Tible's subsequent opinions were little more than check-the-box forms that contained

03   virtually no explanation for their findings.  He also noted that the opinion seemed to rely primarily

04   on plaintiff's own subjective complaints, which he believed were suspect, and were inconsistent

05   with both the findings in the original report and the daily activities of the plaintiff.  AR. at 20.  In

06   addition, he found other nonexamining medical opinions supporting Dr. Tible's initial opinion.

07   AR. 20, 170-75.

08   Finally, even Dr. Tible's March 27, 2003, seems internally inconsistent with respect to

09   which conclusions should be drawn.  In that report, Dr. Tible indicated that Ms. Rymaruk had an

10   impairment that limited her ability to work or look for full-time work that would last thirty to

11   ninety days if she followed recommended treatment.  She also indicated that Ms. Rymaruk's could

12   not pursue job search activities or work while in treatment, and stated "UNK" as an answer to

13   when she would be able to resume at least part-time work.  However, while Dr. Tible noted that

14   Ms. Rymaruk suffered daily migraines, she answered "NO" as to whether Ms. Rymaruk should

15   pursue long-term disability benefits such as SSI.  AR. 236-38.

16   Because subsequent reports submitted by Dr. Tible were in fact rendered in check-the-box

17   format with little supporting narrative, because they contained internal inconsistencies and

18   inconsistencies with the initial report, and because the adverse credibility determination about the

19   plaintiff was supported by the record, the ALJ's decision to give credence to Dr. Tible's earlier

20   medical report rather than the subsequent reports was not erroneous.

21   2.  Dr. Caratao.

22   Efren R. Caratao, M.D., examined plaintiff on December 19, 2001, and determined that

23   her migraines resulted in a "moderate" impairment.  AR. at 168-69.  He then determined she would

24   be limited to "sedentary" work but would be unlikely to work even half-time for at least twenty

25   weeks.  AR. at 169.  As noted above, Dr. Tible's initial assessment of Ms. Rymaruk was that she

26   could perform "light work."  Nontreating physicians, Drs. Virji and Smith, also rated her capable

REPORT AND RECOMMENDATION
PAGE -12

01  of "light work."  AR. 170-75.  The plaintiff alleges that the ALJ erred because Dr. Caratao's
02  assessment of the plaintiff as a treating physician was not accorded proper weight.

03      An opinion of a nonexamining medical advisor cannot by itself constitute substantial
04  evidence that justifies the rejection of the opinion of an examining or treating physician, as the
05  plaintiff contends.  *Lester*, 81 F.3d 821, 830-31.  However, the Ninth Circuit has upheld the
06  Commissioner's rejection of a treating physician's opinion  based in part upon the testimony of a
07  nontreating, nonexamining medical advisor when conflicts in medical testimony were present and
08  adverse credibility determinations are sustained.  *Morgan*, 169 F.3d at 602.

09      In this case, the ALJ determined that Dr. Caratao's opinion that Ms. Rymaruk was limited
10  to the "sedentary" work level was inconsistent with his determination that her migraine headaches
11  were of only "moderate" severity.  He also found that this rating level was inconsistent with other
12  medical reports and with exertional levels regarding household activities undertaken by the
13  plaintiff.  This conclusion was bolstered by his adverse credibility determination regarding the
14  plaintiff.  The ALJ's determination in this regard is supported by substantial evidence.  As a result,
15  it must be accepted by this Court.  *See Thomas*, 278 F.3d at 954.

16      *D.*      *The ALJ did not err by failing to call the vocational expert to testify.*

17      Plaintiff relies upon the Social Security Administration's *Hearings, Appeals and Litigation*
18  *Law Manual* ("HALLEX") to argue that the ALJ erred at step four by failing to call a vocational
19  expert ("VE") to clarify the vocational impact of her non-exertional impairments on her ability to
20  perform past relevant work.  Dkt. No. 19 at 8-10.  She argues that failure to do so constitutes
21  reversible error.  *Id.*

22          1.  Reliance on HALLEX.

23      Plaintiff's reliance on HALLEX to require the ALJ to call a VE is misplaced because it is
24  an internal manual with no binding legal force.  *Moore v. Apfel*, 216 F.3d 864, 868 (9th Cir. 2000).
25  Nothing suggests that an ALJ's failure to comply with HALLEX invalidates the agency's action
26  or requires remand.  Moreover, the provision cited by plaintiff is merely permissive.  Dkt. No. 19

REPORT AND RECOMMENDATION
PAGE -13

01  at 9. Thus, even if the ALJ failed to properly call on a VE in accord with HALLEX, failure to do

02  so should be treated as harmless error and no remand granted on that basis alone.

03  2. Duty to Call a Vocational Expert.

04  Plaintiff's reliance on Ninth Circuit cases for the proposition that an ALJ must obtain VE

05  testimony in order to determine the impact of non-exertional impairments on her ability to perform

06  past work is misplaced. The testimony of a VE is not required at step four of the disability

07  evaluative process, but may be needed *after* the burden of proof shifts to the Commissioner at step

08  five. *Social Security Law & Practice, Hearing Procedures* § 52.91 (West 1999); *Thomas*, 278

09  F.3d at 955 (indicating that when the burden shifts at step five, the Commissioner may meet it by

10  calling a vocational expert).

11  Here, the cases cited by plaintiff all address the use of a VE in connection with a step five

12  determination of whether a claimant could perform other work. Dkt. No. 9 at 9. The ALJ,

13  however, determined at step four that plaintiff was capable of performing her past relevant work

14  and therefore did not proceed to step five. AR. at 23. There was no obligation for an ALJ to call

15  a VE at step four and, because he found plaintiff capable of performing past relevant work, he was

16  not obligated to proceed to step five. 20 C.F.R. § 404.1520(f); *Crane,* 76 F.3d at 255. While

17  there is no doubt that the VE testimony would have made for a more complete record, and while

18  it appears that it might have been better practice to receive the evidence because the VE was

19  present at the hearing, the issue before the Court is not a best practices issue. Rather, the question

20  is whether the failure to call the VE constitutes reversible error when the determination has been

21  made at step four of the evaluation process that there is no disability. It does not.

22  VIII. CONCLUSION

23  Accordingly, I recommend that the final decision of the Commissioner be affirmed and that

24  the appeal be dismissed. A proposed Order accompanies this Report and Recommendation.

25

26

REPORT AND RECOMMENDATION
PAGE -14

01          DATED this 16th day of May, 2005.

02

03

04                                                _____
                                                  JAMES P. DONOHUE
05                                                United States Magistrate Judge

06

07

08

09

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

REPORT AND RECOMMENDATION
PAGE -15